UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| PONIE CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:23-cv-00054-JMS-MG |
| | ) |
| ROBERT ERIC CARTER JR, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS TO DISMISS**

Ponie Clark is a prisoner at Wabash Valley Correctional Facility (WVCF). While incarcerated at WVCF, he worked in a call center operated on the prison grounds by a private company. He is pursuing claims against agents of the Indiana Department of Correction (IDOC) and the call center under the Fair Labor Standards Act's (FLSA) minimum wage, overtime, and retaliation provisions and under the Fourteenth Amendment's equal protection clause.

The defendants seek to dismiss all Mr. Clark's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons that follow, the defendants' motions are **denied** as to Mr. Clark's FLSA claims and **granted** as to his equal protection claims.

**I. Legal Standard**

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all

permissible inferences in favor of the plaintiff. *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## II. Facts

The IDOC and its subdivision Indiana Correctional Industries (ICI) have set up joint ventures at their prisons. In these joint ventures, IDOC inmates provide labor to private companies that produce goods or offer services for profit.

Three joint ventures operate at WVCF: the wire shop, the sewing shop, and the call center. Dkt. 60 at ¶ 33. A different business operates each venture. *Id.* at ¶ 35. None produces "a good or service which further[s] Indiana's penological interests," *id.*, which the Court understands to mean that the joint ventures do not generate operating revenues for the IDOC or produce goods or services that are used to operate the prison or defray the costs of operating the prison. For example, the sewing shop does not produce inmates' jumpsuits or correctional officers' uniforms.

Although they operate at WVCF with inmate labor, the joint ventures operate as private businesses. Employees of the private businesses hire, fire, and directly supervise inmate workers with no direction from the IDOC. *Id.* at ¶ 34.

From September 30, 2019, until November 11, 2021, Mr. Clark worked at the call center. *Id.* at ¶¶ 16–17. The call center was and is operated by Capital Accounts, LLC, and corporate relatives Synergetic Communication, Inc., and Phone Verifications, LLC. *Id.* at ¶ 14. For simplicity, the Court refers to these entities collectively as "Capital Accounts" and to the entities and their employees as the "corporate defendants."

2

Mr. Clark was interviewed and selected for employment at the call center by Capital Accounts employees. *Id.* at ¶ 15. He was supervised by a Capital Accounts employee. *Id.* at ¶ 19. His employment was "non-mandatory." *Id.* at ¶ 16. The Court understands this to mean that he was not required by any prison official or policy to work in the call center and that, if he chose not to work at the call center, he would not have been subject to disciplinary action.

Mr. Clark's duties included "calling various clients and prospects" and sending e-mails. *Id.* at ¶¶ 25–26. Mr. Clark was directed by his supervisors, who were Capital Accounts employees, to identify himself "as an account manager with" Capital Accounts. *Id.* His supervisors sometimes directed him to engage in unethical or unlawful conduct, including misrepresenting how accounts worked, fabricating stories in response to questions, and violating "do not call" list requirements. *Id.* at ¶¶ 30–31. His supervisor, who was a Capital Accounts employee, threatened to terminate his employment if he did not follow these directions. *Id.* at ¶ 32.

Capital Accounts set Mr. Clark's wages and paid into his inmate trust account through ICI. *Id.* at ¶ 19. He began at $0.50 per hour and, after five raises, topped out at $1.50 per hour. *Id.* at ¶ 21. ICI and its employees have allowed Capital Accounts to set these pay rates. *Id.* at ¶ 20. Capital Accounts set these pay rates to maximize its profits. *Id.* at ¶ 37.

The other privately operated joint ventures at WVCF—the wire shop and the sewing shop—pay inmate workers at rates comparable to non-inmate employees, up to $18.00 per hour. *Id.* at ¶ 41. Mr. Clark "met, and meets, all of the qualifications for employment in" the wire shop and the sewing shop. *Id.* at ¶ 42. The complaint provides no information about the duties or tasks performed by wire shop and sewing shop workers.

3

### III. Analysis: FLSA Claims

The FLSA directs that "[e]very employer shall pay to each of his employees" a minimum wage, which currently stands at $7.25 per hour—nearly five times Mr. Clark's top wage at the call center. 29 U.S.C. § 206(a). The FLSA further directs that employers must pay a higher rate for overtime work, *see* 29 U.S.C. § 207(a), and that they may not discharge or discriminate against employees who seek to vindicate their rights under the FLSA, *see* 29 U.S.C. § 215(a)(3).

The FLSA serves a twofold purpose. *Vanskike v. Peters*, 974 F.2d 806, 810 (7th Cir. 1992). First, by imposing minimum labor standards, it seeks to eliminate conditions detrimental to worker health, efficiency, and general well-being. *Id.* (citing *Mitchell v. Robert Demario Jewelry*, 361 U.S. 288, 292 (1960); 29 U.S.C. § 202(a)). Second, by imposing a minimum wage, it seeks "to prevent unfair competition in commerce from the use of underpaid labor." *Id.* (citing 29 U.S.C. § 202(a)(3)).

The defendants seek dismissal of Mr. Clark's FLSA claims on the exclusive ground that he is not an "employee" within the meaning of the FLSA. More specifically, they seek dismissal on the exclusive ground that Mr. Clark cannot be an employee because he was incarcerated while working at the call center.

If inmates are excluded from the FLSA, it is "only because of presumed legislative intent and not because of anything in the actual text of the FLSA." *Bennett v. Frank*, 395 F.3d 409, 409 (7th Cir. 2005). Under the FLSA, an "employee" is simply "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An employer employs an individual if it suffers or permits the individual to work. 29 U.S.C. § 203(g). Based solely on the statutory text, there is no reason why a prisoner cannot be an employee. Indeed, the statute

specifically identifies certain individuals who are not "employees," but none of these exceptions refer to incarceration. *See* 29 U.S.C. § 203(e)(3)–(e)(5).

Further, no controlling Seventh Circuit precedent supports the defendants' position that Mr. Clark's incarceration alone precludes him from FLSA coverage. In fact, in *Vanskike v. Peters*, 974 F.2d 806 (7th Cir. 1992), the Seventh Circuit held that a worker's coverage under the FLSA requires a fact-intensive inquiry—an inquiry that the defendants have not undertaken here. Further, in *Vanskike* and *Bennett*, the Seventh Circuit endorsed decisions holding that incarceration does not preclude FLSA coverage where the prisoner performs work for a third party and the work is unrelated to operation of the prison. Decisions from other courts in this Circuit do not call for a different outcome. Accordingly, this Court denies the defendants' motion based on the clear guidance provided by the Seventh Circuit in the cases on which the defendants rely.

A.     *Carter v. Dutchess Community College*: "[A]n inmate may be entitled under the law to receive the federal minimum wage."

The defendants build their argument that the FLSA never protects prisoners on snippets from three Seventh Circuit decisions: *Vanskike v. Peters*, 974 F.2d 806 (7th Cir. 1992), *Bennett v. Frank*, 395 F.3d 409 (7th Cir. 2005), and *Sanders v. Hayden*, 544 F.3d 812, 814 (7th Cir. 2008). All three precedents remain good law, but none dealt with the facts of this case. Moreover, *Vanskike* and *Bennett* recognize that the Second Circuit provided the correct framework for resolving the facts Mr. Clark alleges in *Carter v. Dutchess Community College*, 735 F.2d 8 (2d Cir.1984). Therefore, this Court follows the Seventh Circuit's guidance and begins its analysis with *Carter*.

Carter was an inmate at a New York state prison. 735 F.2d at 10. Dutchess Community College offered courses to inmates, and Carter worked as a teaching assistant. *Id.* Like Mr. Clark, Carter was selected by the College, and he performed his duties at the prison under the supervision

5

of the College's staff. *Id.* He was paid $1.20 per hour—less than the minimum wage in 1980, but nearly as much as Mr. Clark's top wage at the call center 40 years later. *Id.* at 11.

The Second Circuit considered "whether prisoners ever may be considered employees for the purposes of the minimum wage provisions of the FLSA." *Id.* at 12. It squarely rejected the defendants' assertion that prisoners cannot be FLSA employees and held "that an inmate may be entitled under the law to receive the federal minimum wage from an outside employer." *Id.* at 13–14. Incarceration is not dispositive. Rather, to determine whether any worker is a FLSA "employee," a "full inquiry into the true economic reality is necessary." *Id.* at 14.[1]

**B.**     ***Vanskike*, *Bennett*, and *Sanders*: Totality of the Circumstances and Economic Reality**

The defendants correctly note that, in *Vanskike*, *Bennett*, and *Sanders*, the Seventh Circuit held that inmate workers were not employees protected by the FLSA. However, a careful reading of each case reveals that these were fact-specific rulings, not categorical holdings that inmates can never be FLSA employees. Indeed, *Vanskike* directed courts to assess the totality of the worker's economic reality when determining FLSA coverage, and both *Vanskike* and *Bennett* counseled that *Carter*'s holding that prisoners may be FLSA employees should govern cases where a prisoner performs work unrelated to prison operations.

---

[1] Subsequent Second Circuit decisions have modified the precise contours of the economic reality inquiry but have not abandoned its holding that inmate labor is not categorically beyond the FLSA's wage protections. *See Danneskjold v. Hausrath*, 82 F.3d 37, 40–41 (2d Cir. 1996) ("Although we do not disturb Carter's rejection of a rule that a prisoner's labor is at all times and in all circumstances exempt from the FLSA, or discard use of an economic reality test to determine whether such labor is subject to the FLSA, we do reexamine and reject its use of the four-part *Bonnette* test to make that determination."). The Court does not concern itself here with the precise factors to be considered in determining whether a prisoner's work is covered by the FLSA because the defendants seek dismissal only on the basis that no prisoner's work is *ever* covered.

6

1. *Vanskike*: Courts "must examine the 'economic reality' of the working relationship."

Vanskike, an Illinois prisoner, sued the director of the Illinois Department of Correction under the FLSA for work he performed in Illinois state prisons. 974 F.2d at 806. There is no indication that Vanskike performed any of the work at issue for a private enterprise like the one Mr. Clark alleges.

The Seventh Circuit ultimately determined that Vanskike was not a FLSA employee. *Id.* at 808. But the court did not reach that decision through blunt or simplistic analysis based solely on the plaintiff's status as an inmate. Rather, it began: "Because status as an 'employee' for purposes of the FLSA depends on the totality of circumstances rather than on any technical label, courts must examine the 'economic reality' of the working relationship." *Vanskike v. Peters*, 974 F.2d 806, 808 (7th Cir. 1992). The court then undertook a fact-specific analysis of Vanskike's relationship with his custodians, emphasizing that he performed forced labor for the prison as opposed to voluntary work for a private enterprise. *Id.* at 808–12. The court also considered at length that allowing prisons to put their prisoners to work for less than the minimum wage does not interfere with the FLSA's purpose of eliminating unfair competition in commercial markets. *Id.* at 811–12.

All defendants quote *Vanskike* for the proposition that the FLSA "does not apply to 'prisoners who are assigned to work within the prison walls for the prison.'" Dkt. 71 at 3; dkt. 73 at 4 (both quoting *Vanskike*, 974 F.2d at 808). As a factual matter, this passage does not require dismissal of Mr. Clark's FLSA claims, which are not based on allegations that he worked "for the prison." *Id.* But the 17-word nugget the defendants quote also is not *Vanskike*'s holding and cannot be the foundation for a broadly applicable, bright-line rule that inmates are never FLSA employees. It comes from a five-page, totality-of-the-circumstances analysis of whether the economic reality of Vanskike's working relationship with his custodians made him a FLSA employee. *Id.* at 807–

7

812. Indeed, the paragraph the defendants quote begins: "We do not question the conclusions of *Carter*, *Watson* and *Hale* that prisoners are not categorically excluded from the FLSA's coverage simply because they are prisoners." *Id.* at 808.

*Vanskike*'s bottom line is that a prisoner's status as a FLSA employee is a complicated question requiring a fact-intensive analysis. In *Vanskike*, the Seventh Circuit undertook the analysis in the case of a prisoner performing forced labor for his custodians. But Mr. Clark sues over voluntary work for a commercial enterprise, so there is no basis for finding that *Vanskike's* fact-intensive analysis would yield the same result. Further, the defendants have not undertaken *Vanskike*'s fact-intensive analysis to the facts of this case, so the Court has no grounds to rely on *Vanskike* as a basis for dismissal. *Vanskike* requires that Mr. Clark's FLSA claims move forward.

2. ***Bennett*: "We have no quarrel with . . . *Carter*."**

Unlike *Vanskike*, *Bennett* offers almost no factual development. The question at issue was whether inmates of a privately operated Wisconsin prison were FLSA employees. 395 F.3d at 409. The Court cited *Vanskike* and cases from other circuits for the broad rule that "[t]he Fair Labor Standards Act is intended for the protection of employees, and prisoners are not employees of their prison, whether it is a public or a private one." *Id.* The Court emphasized that it had "no doubt that the cases" it "cited are correct" and that "employment status doesn't depend on whether the alleged employer is a public or a private body." *Id.* at 410.

All defendants cite *Bennett* for the broad rule that prisoners are never FLSA employees. This reading is forgivable given the Court's unqualified statement that prisoners "are not protected by the" FLSA. *Id.* at 409. For four reasons, though, the defendants' application does not accurately reflect the totality of *Bennett* or of the prevailing law of this circuit as it applies to this case.

8

First, *Bennett* does not overturn *Vanskike*, which held that FLSA coverage is a fact-intensive question and that incarceration is not dispositive. In fact, *Bennett* states that *Van Skike* was "no doubt . . . correct." 395 F.3d at 410.

Second, *Vanskike* undertook a thorough factual analysis and determined that prisoners are not FLSA employees when they perform forced labor for their custodians. *Bennett* cannot be read as undertaking the same fact-intensive analysis and determining that prisoners are not FLSA employees when they voluntarily perform work unrelated to prison management for private enterprises. No facts indicate that *Bennett*'s plaintiff worked under circumstances analogous to Mr. Clark's. To the extent *Bennett* can be read as reaching *Vanskike*'s result under new facts, it can be read only as finding that prisoners are not FLSA employees when they work for private entities contracted to provide custodial services. The example the Seventh Circuit used to illustrate its holding—"A prison's decision to hire a catering firm to operate its cafeteria should not influence the entitlements of a prisoner who works in the cafeteria."—is plainly distinguishable from Mr. Clark's allegations that he performed debt collection services for Capital Accounts. *Bennett*, 395 F.3d at 410.

Third, *Bennet*'s reasoning does not align with a categorical rule that inmates are never FLSA employees. Although *Bennett* stated that inmates are not covered by the FLSA, it stated more precisely that "prisoners are not employees *of their prison*." 395 F.3d at 410 (emphasis added).  The Court explained:

> People are not imprisoned for the purpose of enabling them to earn a living. The prison pays for their keep. If it puts them to work, it is to offset some of the cost of keeping them, or to keep them out of mischief, or to ease their transition to the world outside, or to equip them with skills and habits that will make them less likely to return to crime outside. None of these goals is compatible with federal regulation of their wages and hours.

*Id.* at 410. This reasoning does not align whatsoever with the facts alleged in Mr. Clark's complaint. The prison did not put him to work in the call center; he worked there of his own accord after being selected by Capital Accounts. His work for Capital Accounts did not offset the costs of his imprisonment; he did not produce anything used in the prison or generate any revenue for the IDOC. His work was not designed to keep him out of mischief or deter recidivism; indeed, he alleges that Capital Accounts *directed him* to engage in unlawful practices. *Bennett* held that Mr. Clark cannot be an employee of his prison, but he does not claim to be an employee of the prison. Rather, he claims to have been an employee of Capital Accounts, and *Bennett* did not foreclose that possibility.

Fourth, *Bennett* expressly approved *Carter* and endorsed the notion that the FLSA may apply to "prisoners working for private companies . . . as free laborers" rather than "as prison labor." *Id.* A decision upholding *Carter*—which explicitly held that "an inmate may be entitled under the law to receive the federal minimum wage from an outside employer," 735 F.2d at 14—cannot be the basis for a brightline rule that prisoners are never FLSA employees.[2]

In short, the Seventh Circuit directed in *Vanskike* that a court faced with the question of the FLSA's application to an inmate's work must undertake a detailed factual inquiry. The *Vanskike* Court completed that inquiry and determined that an inmate performing forced labor for his custodians is not their employee. *Bennett* deemed *Vanskike* and the decisions undergirding it

---

[2] The corporate defendants correctly note that *Bennett*'s endorsement of *Carter* includes a reference to inmates working "as free labor," "for private companies under work-release programs." Dkt. 86 at 2; *Bennett*, 395 F.3d at 410. *Carter* concerns work performed in an educational program offered inside a prison, so the Court does not read *Bennett*'s endorsement of *Carter* as holding that "the only exceptional circumstance in which . . . a prisoner may be considered an employee under the FLSA is when he is working as a free laborer outside the prison under work-release programs in transition to their expected discharge from the prison." Dkt. 86 at 2. Regardless, any ambiguity about the value of *Carter* in this Circuit has no bearing on the outcome of this case. *Bennett* built on *Vanskike*, which requires a fact-specific analysis and rejected the prisoners-are-never-employees rule at the heart of the defendants' motion.

correctly decided and extended its application only to prison labor for private entities contracted to provide custodial services. It does not support the broad rule the defendants advance, and it has no bearing on Mr. Clark's claims that he provided debt collection services for a private enterprise.

### 3. *Sanders*: Further Support for *Vanskike* and *Carter*

In *Sanders*, a civilly committed sexually violent person sued state officials under 42 U.S.C. § 1983 for "reducing his pay for the work he perform[ed] at" his facility. 544 F.3d at 813–814. The Seventh Circuit's decision provides no information about the work Sanders performed, whether he performed it voluntarily, or whether he performed it for his custodians or a separate corporate enterprise.

The Seventh Circuit *sua sponte* considered Sanders' claims under the FLSA and repeated *Bennett*'s proclamation that "[p]rison and jail inmates are not covered by the FLSA." *Id.* at 814. The Court reasoned in a terse opinion that none of the FLSA's purposes dictated that a different result should apply to civilly confined sexually violent persons than to prisoners performing compulsory work for their custodians. *Id.*

As with *Bennett*, the defendants have not persuaded the Court that *Sanders*' isolated statement that "inmates are not covered by the FLSA," *id.*, dictates that Mr. Clark's FLSA claims fail. The cases are not factually analogous. Moreover, *Sanders* supports its proclamation with citations to *Vanskike*, which held that FLSA coverage requires a fact-specific inquiry, and *Bennett*, which built on *Vanskike* and endorsed *Carter*. *Sanders* also cites *Danneskjold*, 82 F.3d at 42, which upheld *Carter*'s holding that prisoners *can* be FLSA employees and adopted *Vanskike*'s fact-intensive economic reality analysis. Although *Danneskjold* held that the FLSA does not cover "prison labor that produces goods or services for the use of the prison," it explicitly declined to "address the questions that arise when the prison labor is employed to produce goods or services

11

that are sold in commerce." *Id.* at 44. Those are precisely the questions Mr. Clark has raised, and a decision upholding *Vanskike*, *Carter*, and *Danneskjold* cannot be the basis for dismissing them.

## C. Other District Court Decisions

The defendants cite a series of District Court decisions for the proposition that a prisoner paid by a private entity for work performed at a prison is not an FLSA employee. But those precedents do not bind this Court, and, with one exception addressed below, they are not on all fours with *Carter* or this case.

In *Lashbrook v. Grace College & Theological Seminary*, No. 2:15-cv-00206-JMS-MJD, 2016 WL 7242462 (S.D. Ind. Dec. 15, 2016), this Court found that an inmate paid by a private college to work as a teaching assistant and tutor for inmate students was not an employee under the FLSA. But the Court reached that determination after completing a detailed, fact-intensive inquiry into the contractual relationship between the IDOC and the college and the stated purposes of the tutoring program. *Id.* at *5–7. The defendants do not ask the Court to resolve this case on the same grounds as *Lashbrook*. They do not ask the Court to engage in any factual analysis at all. Rather, they ask the Court to apply a broad rule that was never even considered in *Lashbrook*.

Further, critical factual considerations in *Lashbrook* do not appear to apply in this case. Lashbrook provided services to other inmates and ultimately for their benefit, not for the benefit of the College. By contrast, Mr. Clark worked for Capital Accounts for the purpose of generating profits for Capital Accounts—not to provide any benefit to the IDOC or the inmates in its custody. In *Lashbrook*, this Court found that the College would not have used tutors except at the IDOC's urging. *Id.* at *2. In other words, it would have offered courses at the prison without tutors and involved inmates as tutors only at the IDOC's request. It was not competing with other educational institutions to provide educational services in the prison, and excepting inmate tutors from the

FLSA did not defeat the law's purpose of preventing "unfair competition in commerce." *Id.* at *6–7. By contrast, it appears that Capital Accounts operates its for-profit call center at WVCF because WVCF can offer inexpensive labor. Further, that access to inexpensive labor would appear to give Capital Accounts a distinct advantage over other debt collection services that must comply with the FLSA.

*Buie v. Aramark Co.*, No. 19-CV-76-JPS, 2019 WL 5558382, at *2 (E.D. Wis. Oct. 28, 2019) considered an inmate "assigned to work" in the prison kitchen for its private food-service contractor. But Buie was assigned to work in the kitchen and ultimately provided services to inmates and defrayed the state's cost of incarcerating them. These facts do not parallel Mr. Clark's allegations that he was not compelled by the IDOC to work at the call center and that his work exclusively benefitted Capital Accounts rather than providing service to inmates or defraying the cost of incarcerating them. Further, *Buie*'s facts fall squarely within the holding of *Bennett* and the hypothetical case it created to illustrate its holding. *See* 395 F.3d at 410 ("A prison's decision to hire a catering firm to operate its cafeteria should not influence the entitlements of a prisoner who works in the cafeteria."). For the reasons set out above, *Bennett* does not call for the dismissal of Mr. Clark's FLSA claims, and neither can a District Court decision applying *Bennett*.

In *Bridges v. Carter*, No. 3:22-CV-7-JD-MGG, 2022 WL 1238569 (N.D. Ind. Apr. 26, 2022), the Northern District of Indiana considered a *constitutional* challenge to the deduction of room and board costs from a prisoner's pay from a private company. The court ultimately held that there was clear authority allowing the IDOC to take the deductions. *Id.* at *2. The court stated as part of its reasoning that Bridges had "no claim" under the FLSA "to receive any particular amount as wages," but the factual presentation does not address any details of Bridges' work or wages. *Id.*

13

It is not clear who benefitted from Bridges' work or even that Bridges was paid less than the minimum wage, even after deductions.

*Eltzroth v. Klutz*, No. 3:21-CV-605-DRL-MGG, 2022 WL 1449607 (N.D. Ind. May 6, 2022), was another constitutional challenge to pay deductions and was resolved on the same grounds. The factual discussion indicates that Eltzroth was paid at least the minimum wage, *see id.* at *1, and there is no indication he asserted any claim or argument based on FLSA's wage requirements.

**D.**     *Vanderpool***: A Respectful Disagreement**

That leaves *Vanderpool v. Capital Accounts*, No. 2:22-cv-00403-JPH-MKK, dkt. 56 (S.D. Ind. Mar. 11, 2024), a lawsuit identical to this one filed by another inmate who worked for pennies at the WVCF call center. Judge Hanlon granted a motion to dismiss by Capital Accounts, finding that *Vanskike*, *Bennett*, and *Sanders* "hold—broadly as a matter of law—that prisoners are not employees under the FLSA." *Id.* at 5. For the reasons set out above, the Court respectfully disagrees with that broad reading of those precedents.

Judge Hanlon also relied on *Smith v. Dart*, 803 F.3d 304, 314 (7th Cir. 2015), which echoed *Bennett* and *Sanders* and concluded that, "like prisoners and civil detainees, pretrial detainees are not protected by the FLSA because they are not employees of their prison." Like *Bennett* and *Sanders*, though, *Smith* left *Vanskike* and its requirement of a fact-specific assessment of the worker's economic reality in place. Moreover, Smith worked "in the jail laundry," not for a private commercial enterprise like Capital Accounts. 803 F.3d at 307. *Smith* is no more of a basis for dismissing Mr. Clark's claims than *Vanskike*, *Bennett*, or *Sanders*.

It is fundamental that "a district court decision does not have stare decisis effect; it is not a precedent." *Midlock v. Apple Vacations West*, 406 F.3d 453, 457 (7th Cir. 2005). "The fact of such

14

a decision is not a reason for following it." *Id.* at 458. For the reasons set out above, the Court respectfully disagrees with the defendants' interpretation of the Seventh Circuit's FLSA precedents and, by extension Judge Hanlon's decision in *Vanderpool* applying that interpretation.

**E.    Conclusion**

The Seventh Circuit has not directly confronted the question of whether the FLSA protects an inmate hired, supervised, and paid by a private, for-profit company to work on prison grounds for the exclusive purpose of enriching the private company. The defendants here do not address that question either and instead ask the Court to dismiss Mr. Clark's FLSA claims for the sole reason that he is a prisoner.

The Seventh Circuit has held, unambiguously, that "status as an 'employee' for purposes of the FLSA depends on the totality of circumstances rather than on any technical label," so "courts must examine the 'economic reality' of the working relationship." *Vanskike*, 974 F.2d at 808. It has repeatedly endorsed *Carter*, which held "that an inmate may be entitled under the law to receive the federal minimum wage from an outside employer." *Id.* at 13–14. The defendants ask this Court to bypass the analysis required by *Vanskike* and ignore the clear rule it adopted from *Carter*. Because the defendants offer no other grounds for dismissing Mr. Clark's FLSA claims, the Court denies their motions.[3]

---

[3] Before proceeding to the equal protection claims, the Court acknowledges the IDOC defendants' argument that Mr. Clark "does not assert allegations against IDOC Defendants related to his FLSA claims" and that his FLSA claims against them should be dismissed for that reason alone. Dkt. 73 at 3, n.1. They also argue that Mr. Clark "has not asserted any factual allegations which would show an employer-employee relationship to trigger FLSA." Dkt. 73 at 6.

But the IDOC defendants do not confront Mr. Clark's allegations that they allowed Capital Accounts to pay him less than the minimum wage and facilitated the payments. Dk. 60 at ¶¶ 18, 20. And they do not state what facts Mr. Clark would have to allege to plead an actionable employer-employee relationship between Mr. Clark and the IDOC. Because "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived," *United States v. Cisneros*, 846 F.3d 972, 978 (7th Cir. 2017), these scant arguments are not a basis for dismissal.

## IV. Analysis: Equal Protection Claims

Mr. Clark pursues his equal protection claims under a "class of one" theory. "A class-of-one plaintiff must establish that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Greenwald Fam. Ltd. P'ship v. Mukwonago*, 100 F.4th 814, 822–23 (7th Cir. 2024) (quoting *Village of Willowbrook v Olech*, 528 U.S. 562, 564 (2000)). To clear the first hurdle, Mr. Clark must support a reasonable inference that he and other similarly situated inmates were "*prima facie* identical in all relevant respects or directly comparable in all material respects." *Greenwald*, 100 F.4th at 823 (cleaned up). To clear the second hurdle, he must support a reasonable inference that "there is no rational basis for the difference in treatment" by negating "any reasonably conceivable state of facts that could provide a rational basis." *Id.* This is true "even at the pleadings stage." *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015). "[I]t is possible for plaintiffs to plead themselves out of court if their complaint reveals a potential rational basis" for differential treatment. *Id.*

In this case, the two inquiries go hand in hand.

The defendants argue, and the Court agrees, that Mr. Clark has not alleged facts sufficient to support a reasonable inference that he was identical in all relevant respects or directly comparable in all material respects to inmates who worked at the sewing and wire shops. Beyond alleging that he was qualified to work in all three shops, Mr. Clark offers no insight into workers' duties or day-to-day activities.

As a result, the complaint reveals a conceivable rational basis for differential pay: different duties and work environments. It is inferable that inmates in the wire and sewing shops engaged in more physically demanding work with potentially dangerous machinery. If, as Mr. Clark alleges,

16

inmates choose to work in the joint ventures, employers requiring more demanding or dangerous work would rationally offer greater pay to attract workers.

Mr. Clark has pled himself out of an equal protection claim by allowing an inference that work in the three shops was substantially different and failing to allege facts supporting a conclusion that they were materially comparable. Even viewed in the light most favorable to Mr. Clark, his pleadings allow reasonable inferences that his work was materially different from the work inmates performed in the other joint enterprises and that any difference in pay was rationally related to those differences.[4]

### V. Conclusion

The defendants' motions to dismiss, dkts. [70] and [72], are **granted** as to Mr. Clark's equal protection claims and **denied** as to his FLSA claims. The defendants will have **fourteen days** to answer the amended complaint.

**IT IS SO ORDERED.**

Date: 2/27/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[4] Equal protection claims against the corporate defendants fail for an additional and perhaps more fundamental reason. As they correctly note, Mr. Clark does not allege that the corporate defendants had any involvement in determining wire shop or sewing shop workers' wages. The amended complaint cannot support a reasonable inference that the corporate defendants treated Mr. Clark different from wire shop or sewing shop workers because it does not support a reasonable inference that it treated those workers at all.

Distribution:

PONIE CLARK
914442
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Kevin Gallo Barreca
Sessions, Israel & Shartle, LLC
kbarreca@sessions.legal

Robert J. Hunt
LAW OFFICE OF ROBERT J. HUNT, LLC
rob@indianawagelaw.com

Robert F. Hunt
THE LAW OFFICE OF ROBERT J. HUNT, LLC
rfh@indianawagelaw.com

Korby E Kazyak
Sessions Israel Shartle
kkazyak@sessions.legal

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com